UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARIO WILSON,

                Plaintiff,

   v.

RICHARD POOR,

                Defendant.

Case No. C19-5920 BHS-TLF

REPORT AND RECOMMENDATION

Noted for March 18, 2022

This matter comes before the Court on defendant's motion for summary judgment and motion to dismiss (Dkt. 42) and plaintiff's cross-motion for summary judgment (Dkt. 57). This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons set forth below, the Court should GRANT defendant's motion for summary judgment on plaintiff's religious access claim (Dkt. 42), DENY defendant's motion to dismiss plaintiff's retaliation claim (Dkt. 42) and DENY plaintiff's cross-motion for summary judgment (Dkt. 57).

## FACTUAL BACKGROUND

Plaintiff's amended complaint brings claims against defendant in his individual and official capacity for alleged constitutional violations while plaintiff was housed at Stafford Creek Corrections Center. Dkt. 37, Amended Complaint. Plaintiff alleges that on May 5, 2019, plaintiff requested to receive food at a specific time -- in order properly

REPORT AND RECOMMENDATION - 1

1  conform to the requirements of plaintiff's religion -- by fasting during daylight hours
2  during Ramadan. Dkt. 37 at 2. Plaintiff contends that defendant became enraged and
3  interrupted plaintiff. Dkt. 37 at 3. Next, plaintiff contends that he threatened to file a
4  grievance against defendant for refusing to feed plaintiff and that defendant responded
5  by threatening to physically harm plaintiff. Dkt. 37 at 3. The amended complaint also
6  contends defendant retaliated against plaintiff by sending plaintiff back to his living unit.
7  Dkt. 37 at 3.
8      In support of the amended complaint, plaintiff submitted affidavits from people
9  who witnessed the occurrences of May 5, 2019. Dkt. 37 at 8-14. Michael A. Smith
10 stated that he observed plaintiff and defendant in a disagreement regarding when
11 Ramadan officially commenced and that defendant raised his voice at plaintiff. Dkt. 37,
12 Affidavit of Michael A. Smith, at 8. Teddy Lee Vickers reported that he observed
13 defendant tell another correctional officer that if plaintiff was not removed from the
14 kitchen defendant would physically harm plaintiff and that the other officer removed
15 plaintiff back to the living unit. Dkt. 37, Affidavit of Teddy L. Vickers, at 10-11. Michael
16 Johnson and Gary Martin stated that they observed defendant yell at plaintiff and
17 physically threaten plaintiff before plaintiff returned to his living unit. Dkt. 37, Affidavit of
18 Michael Johnson, at 13; Dkt. 37, Affidavit of Gary A Martin, at 14.
19     Plaintiff also submitted the grievance interview of Keith Crovisier, a Department
20 of Corrections Employee. Dkt. 37, Grievance Interview Notes, at 16. Mr. Crovisier
21 stated that he observed plaintiff and defendant in an argument over meals and that
22 defendant yelled at plaintiff and appeared agitated. Dkt. 37 at 16.

REPORT AND RECOMMENDATION - 2

In response to plaintiff's grievance regarding defendant's conduct, Superintendent R. Haynes stated that the investigation of the incident found insufficient evidence to substantiate plaintiff's claims and declined to take any further action. Dkt. 37, Level II Grievance Response, at 20. In response to plaintiff's grievance appeal, C. Headley, Manager of Security Operations, responded: "[e]mployees are expected to treat incarcerated individuals with dignity and respect. In this case you should have been provided with an appropriate professional response. This information will be shared with the facility Superintendent for follow up with the employees." Dkt. 37, Level III Grievance Response, at 22.

## DISCUSSION

### A. Plaintiff's Motion for Extension of Time

Plaintiff filed a motion for extension of time to respond to defendant's motion for summary judgment and motion to dismiss. Dkt. 56. Plaintiff subsequently filed a cross-motion and response to defendant's motion (Dkt. 57) and defendant has filed a response (Dkt. 65). Accordingly, the Court should DENY plaintiff's motion for extension of time as moot.

### B. Request for Judicial Notice

Plaintiff has filed two motions for judicial notice. Dkt. 54, 55. Plaintiff's first motion for judicial notice requests that the Court take judicial notice of: 1) the statutory language of Washington Revised Code Section 4.22.070, 2) the statutory language of Federal Rule of Civil Procedure 33(b)(3)(5), and 3) Plaintiff's First Set of Interrogatories and Defendant's Response and Objections. Dkt. 54. Plaintiff's second motion for judicial notice requests that the Court take judicial notice of: 1) the statutory language of Article

1 | I Section 6 of the Washington State Constitution; 2) the statutory language of 18 U.S.C.
2 | § 1621; and 3) the statutory language of Federal Rule of Civil Procedure 33(b)(3)(5).

Under Rule 201 of the Federal Rules of Evidence, the district court may take notice of an adjudicative fact if it is "not subject to reasonable dispute"; this test is satisfied if the fact is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(1)-(2). The Court may not resolve disputes of fact or take notice of disputed facts that exist in documents that are subject to judicial notice. *Kohja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

The Court should deny plaintiff's request to take judicial notice of the statutory language of the Washington Revised Code, the Federal Rules of Civil Procedure, the Washington State Constitution, and 18 U.S.C. § 1621. Judicial notice of legislative facts, such as the applicability of a statute is unnecessary. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 578 F.3d 1016, 1021-22 (9th Cir. 2009) (citing *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) ("[J]udicial notice is generally not the appropriate means to establish the legal principles governing the case.").

Additionally, the Court should deny plaintiff's motion to take judicial notice of defendant's discovery responses. Discovery requests and responses are not subject to judicial notice because they are not "self-authenticating" and cannot be verified. *United Safeguard Distribs. Ass'n v. Safeguard Bus. Sys.*, 145 F. Supp. 3d 932, 942 (C.D. Cal., 2015).

C.  <u>Defendant's Motion for Summary Judgment</u>

Defendant's motion for summary judgment requests that the Court dismiss plaintiff's religious access claim for failure to exhaust administrative remedies.

Summary judgment is supported if the materials in the record "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure (FRCP) 56 (a),(c). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In this context, materiality means the fact is one that is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit"; thus, materiality is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The non-moving party is required to show that genuine issues of material fact "'can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party.'" California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson,* 477 U.S. at 250) (emphasis in original)). When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson,* at 255. Yet the Court is not allowed to perform the

1   jury's function – the Court may not weigh evidence, draw legitimate inferences from

2   facts, or decide credibility. *Id.*

3       If the moving party meets their initial burden, an adverse party may not rest upon

4   the mere allegations or denials of his pleading; his or her response, by affidavits or as

5   otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine

6   issue for trial. FRCP 56(c). The Court may not disregard evidence solely based on its

7   self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015).

8   "The district court can disregard a self-serving declaration that states only conclusions

9   and not facts that would be admissible evidence." *Id.*

10      In order to comply with the exhaustion requirement of the PLRA, a plaintiff must

11  exhaust each of the claims raised in the complaint. *Jones v. Bock*, 549 U.S. 199, 219

12  (2007); *Cleveland v. Anderson*, 223 Fed. Appx. 652, 652 (9th Cir. 2007). The record

13  shows that plaintiff has not exhausted all available remedies for plaintiff's claims that

14  defendant denied plaintiff's right to practice protected religious activities such as

15  receiving a Ramadan meal and praying. Plaintiff's allegations regarding defendant

16  refusing plaintiff food and interfering with plaintiff's religious practices were raised in the

17  unexhausted 19678415 Grievance. Plaintiff withdrew this grievance because the issue

18  had been remedied.

19      The Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative

20  remedies prior to filing a complaint in federal court. The PLRA states:

21      No action shall be brought with respect to prison conditions under [42
        U.S.C. § 1983], or any other Federal law, by a prisoner confined in any
22      jail, prison, or other correctional facility until such administrative remedies
        as are available are exhausted.

REPORT AND RECOMMENDATION - 6

1   42 U.S.C. § 1997e(a).

2   "All 'available' remedies" must be exhausted, "[e]ven when the prisoner seeks relief not available in grievance proceedings." *Porter v. Nusle*, 534 U.S. 516, 524 (2002). The mere fact a plaintiff filed an initial grievance under a prison's grievance policy does not satisfy the PLRA exhaustion requirement; a plaintiff must exhaust *all* levels of an available grievance procedure before he can initiate litigation. *Booth v. Churner*, 532 U.S. 731, 736-41 (2001). The Court, must dismiss a prisoner's complaint "'when there is no *presuit* exhaustion,' even if there is exhaustion while suit is pending." *Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005) (quoting *Mckinney v. Carey,* 311 F.3d 1198, 1200 (9th Cir. 2002)) (emphasis added by the court of appeals).

Failure to exhaust administrative remedies is properly brought as a summary judgment motion. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014). Once the defendant proves there was an available administrative remedy and the offender failed to exhaust the available remedy, the burden shifts to the plaintiff. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2014). The plaintiff must show there was something about his claims which made the "existing and generally available administrative remedies effectively unavailable to him." *Id.* A plaintiff may demonstrate that the remedies were effectively unavailable by showing that the remedies were "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Id.*

A remedy is unavailable when a reasonable inmate could not be expected to know, use or understand the process required to achieve the remedy. *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). Similarly, if a remedy is futile because officials are unable or unwilling to provide relief to an aggrieved inmate, the remedy is unavailable. *Id.*

Defendant has submitted evidence that there was an available administrative remedy and grievance procedure. Dkt. 43-1, Offender Grievance Program. Additionally, plaintiff acknowledges that a grievance procedure existed, and that plaintiff utilized the grievance procedure. Dkt. 57, Plaintiff's Cross-Motion, at 4-5; Dkt. 37, Grievance Log I.D. Number 19678604 ("19678604 Grievance"), at 18.

The record indicates that plaintiff filed two separate grievances related to the incident between plaintiff and defendant on May 5, 2019. The first grievance was filed on the same date. Dkt. 43-2, Emergency Grievance Log I.D. Number 19678415 ("19678415 Grievance") (5/5/19), at 2. This grievance relates to defendant refusing to give plaintiff a meal so that plaintiff could properly conform to his religious requirements of fasting during the daylight hours of Ramadan. *Id*.

Plaintiff withdrew this grievance after the issue was resolved -- plaintiff was allowed to return to the kitchen to pick up his Ramadan meal. *Id*. There is no indication in the record that plaintiff appealed this grievance or pursued further administrative remedies for the issues in this grievance. Accordingly, plaintiff has not exhausted the issues presented in this grievance.

Plaintiff filed the second grievance on May 7, 2019. Dkt. 37, 19678604 Grievance (5/7/19), at 18. That grievance states:

> I'd like to file a staff misconduct on A/C Ronald Poor. On 5-5-19 at approx. 3:00 pm, I was conversing with A/C Keith, informing him (A/C Keith) that Ramadan didn't start until 5-6-19. Upon hearing this conversation, A/C Ronald Poor took it upon himself to interject and express his beliefs about when Ramadan starts, which was based on some memo he (A/C R. Poor) read. I informed A/C Ronald Poor that I've already talked with the food manager, which is his (A/C Poor) supervisor. I informed A/C Ronald Poor that his statement was incorrect & he didn't know what he was talking about. Upon hearing that A/C Ronald Poor's whole face turned red as he screamed as loud as he could, "GET THE FUCK OUT OF MY KITCHEN!"

     In Mr. R. Poor's rage, he went even further and boldly stated that he would "BEAT MY ASS" if I didn't leave his (A/C Ronald Poor) kitchen.

Dkt. 37, Grievance Log I.D. 19678604 (5/7/19), at 18.

     At the Level II Response, Superintendent R. Haynes responded to plaintiff that the investigation found insufficient evidence to substantiate the claims and that no further action would be taken. Dkt. 37, Level II Response (6/13/19). At the Level III Response, Security Operations Manager C. Headley, stated: "[e]mployees are expected to treat incarcerated individuals with dignity and respect. In this case you should have been provided with an appropriate professional response. This information will be shared with the facility Superintendent for follow up with the employees." Dkt. 37, Level III Grievance Response (9/9/2019), at 22. Defendant concedes that plaintiff has exhausted the grievance procedure for the 19678604 Grievance. Dkt. 42 at 5.

     The record indicates that plaintiff exhausted the 19678604 Grievance but withdrew the 19678415 Grievance without exhausting the available remedies. The exhausted grievance (19678604 Grievance) raised the issue of defendant yelling at plaintiff and threatening to physically harm plaintiff. But the 19678604 Grievance does not allege that plaintiff was denied food or sent back to his living unit.

     Plaintiff argues that he was denied the opportunity to exhaust this issue. Dkt. 57 at 14. Plaintiff cites to Interrogatory 23 of Plaintiff's First Set of Interrogatories. Dkt. 57, Plaintiff's First Set of Interrogatories, at 27. Interrogatory 23 asks "Describe the process and procedure for the Exhaustion of Administrative Remedies by a prisoner confined in any jail, prison, or other correctional facility." *Id.* Defendant responded to the Interrogatory: "I do not know. My job duties do not require that I handle inmate

1 grievances." *Id*. The fact that defendant is not familiar with the grievance procedure at
2 Stafford Creek Corrections Center does not indicate whether plaintiff exhausted all
3 available remedies or whether the remedy was effectively unavailable to plaintiff.
4     Next, plaintiff cites the Grievance Investigator Report for Grievance 19678604.
5 Dkt. 57 at 14. The Grievance Investigator Report states that plaintiff "was argumentative
6 and kept trying to make the issue about Ramadan not staff misconduct." Dkt. 43-3,
7 Grievance Investigator Report, at 9. Plaintiff contends that this is evidence that Stafford
8 Creek Corrections Center prevented plaintiff from grieving his freedom of religion
9 claims. However, the record shows that plaintiff was able to, and did raise the issue of
10 being denied food -- in a manner that would allow plaintiff to comply with religious
11 requirements -- in a grievance. Dkt. 43-2, 19678415 Grievance, at 2. This grievance
12 was resolved and ultimately withdrawn. *Id*.
13     The record indicates that plaintiff was not prevented from filing grievances and
14 that the grievance procedure was not effectively unavailable to plaintiff.
15     Defendant argues that plaintiff's claim should be dismissed with prejudice
16 because plaintiff had the opportunity to exhaust and cannot now exhaust administrative
17 remedies because any attempted exhaustion would be untimely. Dkt. 42 at 8.
18 Defendant cited to *Woodford v. Ngo*. 548 U.S. 81 (2006) for the proposition that
19 exhaustion under the PLRA is analogous to exhaustion for habeas petitions. *Id*.
20     Accordingly, defendant argues that the remedy -- for failure to exhaust a claim
21 that cannot be corrected because any attempt to exhaust would be untimely -- should
22 be dismissal with prejudice. *Id*. Defendant cites to cases from other circuits adopting this
23 reasoning. Yet the Ninth Circuit has not adopted this reasoning and has treated a failure
24
25

REPORT AND RECOMMENDATION - 10

1  to exhaust remedies as appropriately dismissed without prejudice. *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059 (9th Cir. 2007) ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice."); *Vinyard v. Gomez*, 778 Fed. Appx. 519, 519 (9th Cir. 2019); *Williams v. Servin*, 519 Fed. Appx. 497, 498 (9th Cir. 2013). Accordingly, the Court should dismiss plaintiff's freedom of religion claims for failure to exhaust administrative remedies, without prejudice.

Based on the foregoing, the Court should GRANT defendant's motion for summary judgment and dismiss plaintiff's freedom of religion claims without prejudice because plaintiff failed to exhaust all available administrative remedies.

D.  Defendant's Motion to Dismiss

Defendant's motion to dismiss requests that the Court dismiss plaintiff's First Amendment claim for retaliation under Section 1983. Dkt. 42.

When reviewing a motion under Rule 12(b)(6), the Court must accept as true "all well-pleaded allegations of fact in the complaint and construe them in the light most favorable to the non-moving party." *Cedar Point Nursery v. Shiroma*, 923 F.3d 524, 530 (9th Cir. 2019) (internal quotations omitted). The court is not required to accept legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a FRCP 12(b)(6) motion, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A claim is plausible on its face if the pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft*, 556 U.S. at 678. When

evaluating a 12(b)(6) motion, the Court may only consider the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice. *Cedar Point Nursery*, 923 F.3d at 530.

When a plaintiff appears *pro se* in a civil rights case, "the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988). However, this lenient standard does not excuse a *pro se* litigant from meeting the most basic pleading requirements. *See, American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107–08 (9th Cir. 2000).

42 U.S.C. § 1983 "affords a 'civil remedy' for deprivation of federally protected rights caused by persons acting under color of state law." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) overruled in part on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986). To state a claim under Section 1983, a complaint must allege: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Id.* Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

Plaintiff must set forth the specific factual basis upon which the plaintiff claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Vague and conclusory allegations of officials participating in a civil rights violation are not sufficient to support a claim under Section 1983. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

1    Prisoners have a fundamental right to file grievances and pursue civil rights
2 litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). It is clearly
3 established that purely retaliatory acts taken against a prisoner for exercising this right
4 undermines a prisoner's First Amendment protections and is therefore a constitutional
5 violation. *Id*. (citing *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995)).

6    To state a First Amendment claim for retaliation, a plaintiff must show that: 1) "a
7 state actor took some adverse action against the inmate, 2) because of 3) that prisoner's
8 protected conduct, and that such action, 4) chilled the inmate's exercise of his First
9 Amendment rights, and 5) the action did not reasonably advance a legitimate correctional
10 goal." *Rhodes*, 408 F.3d at 567-68.

11    The mere threat of harm, regardless of whether it is carried out, can amount to an
12 adverse action for a retaliation claim. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir.
13 2012) (finding that a prison official threatening to punch an inmate for filing a grievance
14 was an adverse action); *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009). The Ninth
15 Circuit has held that the use of vulgar words, verbal harassment and verbal abuse by
16 prison administrators are insufficient by themselves without further conduct, to state a
17 claim for a constitutional deprivation under Section 1983. *Oltarzewski v. Ruggiero*, 830
18 F.2d 136, 139 (9th Cir. 1987); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996). Further,
19 retaliatory conduct need not be an independent constitutional violation to amount to an
20 adverse action. *Watison*, 668 F.3d at 1114 (citing *Pratt v. Rowland*, 65 F.3d 802, 806 (9th
21 Cir. 1995).

22    With regard to retaliatory intent, "[b]ecause direct evidence of retaliatory intent
23 rarely can be pleaded in a complaint, allegations of a chronology of events from which

REPORT AND RECOMMENDATION - 13

1  retaliation can be inferred is sufficient to survive dismissal." *Watison*, 668 F.3d at 1114.
2  The timing of events and conduct can properly be considered evidence of retaliatory
3  intent. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).
4        At the pleading stage a plaintiff is not required to demonstrate a complete chilling
5  of his First Amendment rights. *Rhodes*, 408 F.3d at 568.  The proper inquiry is "whether
6  an official's acts would chill or silence a person of ordinary firmness from future First
7  Amendment activities." *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283,
8  1300 (9th Cir. 1999). This objective standard is necessary because otherwise a
9  defendant would be allowed to "escape liability for a First Amendment violation merely
10 because an unusually determined plaintiff persists in his protected activity." *Brodheim*,
11 584 F.3d at 1271 (citing *Medocino Enviro. Center*, 192 F.3d at 1300). Additionally, the
12 Ninth Circuit has held that the threat of physical violence against an inmate is
13 sufficiently chilling conduct to allege a retaliation cause of action. *Watison*, 668 F.3d at
14 1116
15       Plaintiff's amended complaint alleges that he stated an intention to file a
16 grievance against defendant and defendant responded by threatening violence against
17 plaintiff. Plaintiff also alleges that defendant threatened violence against plaintiff
18 because of plaintiff's threat of filing a grievance against defendant.
19       These facts are sufficient to meet the criteria for stating a claim under the first
20 three elements that plaintiff must meet – that a state actor took an adverse action
21 against plaintiff because of protected conduct. Additionally, the Ninth Circuit has
22 determined that the threat of violence is sufficiently chilling conduct to state a cause of
23
24
25

REPORT AND RECOMMENDATION - 14

action. Finally, threatening unprovoked violence against prisoners for threatening to file a grievance does not advance any legitimate correctional goal.

Based on the foregoing, plaintiff's amended complaint alleges sufficient facts to state a First Amendment cause of action for retaliation against defendant. Accordingly, the Court should deny defendant's motion to dismiss the retaliation cause of action.

E. <u>Plaintiff's Cross-Motion for Summary Judgment</u>

Plaintiff's cross-motion does not request that the Court grant summary judgment in favor of plaintiff, rather the motion responds to defendant's motions and requests that the Court strike defendant's motions. Dkt. 57. Accordingly, it appears that the cross-motion is a response to defendant's motion and not a separate motion requesting affirmative relief.

To the extent that plaintiff is seeking summary judgment in his favor, the Court should deny the motion because the record indicates conflicting testimony regarding the facts underlying this litigation. Dkt. 37, Affidavit of Michael Smith, at 8; Dkt. 37, Affidavit of Teddy Lee Vickers, at 10-11; Dkt. 37, Affidavit of Michael Johnson, at 13; Dkt. 37, Affidavit of Gary Martin, at 14; Dkt. 37, Interview Notes – Keith Crovisier, at 16; Dkt. 43-3, Interview Notes – Richard Poor, at 5. The Court cannot weigh the evidence or decide the credibility of witnesses on a motion for summary judgment. *Anderson*, 477 U.S. at 255. Accordingly, genuine issues of material fact preclude granting plaintiff's cross-motion for summary judgment.

CONCLUSION

For the reasons set forth in this Report and Recommendation, the Court should:

- DENY plaintiff's motions for judicial notice (Dkt. 54, 55);

REPORT AND RECOMMENDATION - 15

- DENY plaintiff's motion for extension of time (Dkt. 56);
- GRANT defendant's motion for summary judgment on plaintiff's religious access claim (Dkt. 42);
- DENY defendant's motion to dismiss plaintiff's retaliation claim (Dkt. 42):
- DENY plaintiff's cross-motion for summary judgment (Dkt. 57);
- Dismiss without prejudice plaintiff's religious access claim and
- Allow plaintiff's remaining claims to proceed in this litigation.

The parties have fourteen (14) days from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b)(2). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). If objections are filed, the parties shall have fourteen (14) days from the service of the objections to file a response. FRCP 72(b)(2). Accommodating this time limitation, this matter shall be set for consideration on March 18, 2022, as noted in the caption.

Dated this 28th day of February, 2022.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge