UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARIO WILSON,<br><br>                Plaintiff,<br><br>RICHARD POOR,<br><br>                Defendant. | Case No. 3:19-cv-05920-BHS-TLF<br><br>REPORT AND RECOMMENDATION<br><br>Noted for **October 14, 2022** |

    This case is before the Court on defendant's motion for summary judgment, and plaintiff's cross-motion for summary judgment. Dkt 71, 74. The Court should deny both motions.

    This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4).

    Plaintiff is currently an inmate at the Coyote Ridge Corrections Center, within the Washington State Department of Corrections. Dkt. 77, Plaintiff's Reply, at 7. Plaintiff's Amended Complaint asserts claims under 42 U.S.C. § 1983 based on the First Amendment and Fourteenth Amendment, alleging that defendant retaliated[1] against plaintiff in the kitchen at the Stafford Creek Corrections Center, when plaintiff requested a Ramadan meal. Dkt. 37, Amended Complaint at 2-3.

---

[1] Plaintiff's free exercise, access to religious meal claim was dismissed by the Court for failure to exhaust. Dkt. 73.

REPORT AND RECOMMENDATION - 1

**Discussion**

        **a. Summary Judgment Standard**

Summary judgment is supported if the materials in the record "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure (FRCP) 56 (a),(c). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In this context, materiality means the fact is one that is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit"; thus, materiality is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The non-moving party is required to show that genuine issues of material fact "'can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party.*" California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson,* 477 U.S. at 250) (emphasis in original). When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson,* at 255. Yet the Court is not allowed to perform the jury's function – the Court may not weigh evidence, draw legitimate inferences from facts, or decide credibility. *Id*. If the moving party meets their initial burden, an adverse

REPORT AND RECOMMENDATION - 2

party may not rest upon the mere allegations or denials of his pleading; his or her response, by affidavits or as otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine issue for trial. FRCP 56(c). The Court may not disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015). "The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence." *Id.*

### b. 42 U.S.C. § 1983

The elements of a cause of action under Section 1983 for deprivation of a federal constitutional or statutory right are: (a) the conduct (act, omission, or policy) complained of was committed by a person acting under color of state law, and (b) the act, omission, or policy caused a deprivation of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986); *see also,* Ninth Circuit Civil Pattern Jury Instructions 9.1, 9.2, 9.3, 9.4 (describing the elements of a Section 1983 claim against individual defendants, for direct or supervisory conduct in their individual capacity).

### c. First Amendment Retaliation Claim

Plaintiff alleges retaliation under the First Amendment. He asserts that on May 5, 2019, he was attempting to obtain a Ramadan meal and "using assertive and polite communication in an attempt to gain his daily intake of much needed food in order to properly conform to his religious requirements of fasting the following days to come. . ." Dkt. 37, Amended Complaint, at 2. According to plaintiff, the defendant "became

REPORT AND RECOMMENDATION - 3

enraged and interrupted the plaintiff [Mario Wilson]'s speech (a protected right)." Dkt. 37, Amended Complaint, at 3. Plaintiff alleges that he threatened to file a formal grievance based on defendant's refusal to feed plaintiff. *Id.* After plaintiff made this statement of intent to file a grievance, defendant allegedly "became belligerent and threatened to cause plaintiff [Wilson] physical bodily harm for exercising his rights" and then sent plaintiff back to his living unit. *Id.* The Amended Complaint is sworn under penalty of perjury. Dkt. 37, at 6. Plaintiff has submitted affidavits from other individuals who witnessed the events. Dkt. 37 at 10, 13, 14.

The defendant contends that there are no genuine disputes of material fact, because even if all of plaintiff's allegations are accepted as true, he fails to show that any retaliation occurred. In addition, defendant asserts that qualified immunity applies, because plaintiff cannot show there was a clearly established right and that every reasonable official would have understood they would be violating that right, on these facts. Dkt. 76 at 3.

An allegation of retaliation for a prisoner's exercise of his First Amendment right to file grievances or pursue litigation against prison officials may support a claim under § 1983; without this constitutional protection, inmates would be left without a viable mechanism to remedy prison injustices. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).

Plaintiff must prove five basic elements to prevail on such a claim of retaliation: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

REPORT AND RECOMMENDATION - 4

advance a legitimate correctional goal." *Id.* at 567-568. The plaintiff must also show the protected conduct was the substantial or motivating factor driving the prison official's conduct. *See, Mt. Healthy City School Dist. Bd. Of Educ.v. Doyle,* 429 U.S. 274, 286-287 (1977); *Brodheim v. Cry,* 584 F.3d 1262, 1271 (9th Cir. 2009).

### d. Qualified Immunity

Unless plaintiff makes a two-part showing, qualified immunity shields government officials from liability. The plaintiff must show both: (a) that the official(s) violated a federal statutory or constitutional right and (b) that—at the time of the alleged act or failure to act—there was clearly established law that defined the contours of the federal right, such that every reasonable official would understand that what they are doing is unlawful. *Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019).

When qualified immunity is reviewed in the context of a defense motion for summary judgment, the evidence must be considered in the light most favorable to the plaintiff with respect to central facts. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam). If there is a genuine issue of material fact concerning both: (1) Whether it would be clear to every reasonable officer that their conduct was unlawful under the circumstances they confronted, and (2) Whether the defendant's conduct violated a constitutional right", then summary judgment granting qualified immunity is not appropriate. *Bonivert v. City of Clarkston*, 883 F.3d 865, 871 (9th Cir. 2018).

To determine whether plaintiff has satisfied the clearly established law prong of the qualified immunity test the Court must evaluate whether any reasonable officer in the defendant's shoes would have been on notice that defendant's conduct, i.e., removing plaintiff from the kitchen area after plaintiff objected to the refusal to provide

him with a Ramadan meal, and threatening plaintiff with bodily injury after plaintiff stated that he intended to file a grievance -- was unlawful in the situation he confronted. *Plumhoff v. Rickard,* 572 U.S. 765, 779 (2014). *Kisela v. Hughes*, 138 S. Ct. 1148,1152 (2018). "[R]easonableness is judged against the backdrop of the law at the time of the conduct". *Id.* Although the law "does not require a case directly on point," "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoted sources omitted).

The contours of "clearly established law" should not be drawn so stringently "that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Russell v. Lumitap,* 31 F.4th 729, 737 (9th Cir. 2022) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

A plaintiff must show either "controlling authority in their jurisdiction at the time of the incident which clearly established" the right being asserted, or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that [their] actions were lawful." *Wilson v Layne,* 526 U.S. 603, 617 (1999); *Russell v. Lumitap,* 31 F.4th at 737. If a right is clearly established by decisional authority of the Supreme Court or the Ninth Circuit, then the Court need inquire no further. *Ballentine v. Tucker,* 28 F.4th 54, 64 (9th Cir. 2022). It is plaintiff's burden to show that legal precedent was clearly established at the time of the incident on May 5, 2019. *Wilson v Layne,* at 614; *Russell v. Lumitap,* 31 F.4th at 737.

Qualified immunity should be resolved at the "earliest possible stage in litigation," as the doctrine's protective purpose is to provide "*immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985); *Morales v. Fry*, 873

REPORT AND RECOMMENDATION - 6

F.3d 817, 822 (9th Cir. 2017). Early resolution is often possible because "qualified immunity most often turns on legal determinations, not disputed facts." *Id*. at 822. (quoting *Sloman v. Tadlock*, 21 F.3d 1462, 1468 (9th Cir. 1994); *Harlow v. Fitzgerald*, 457 U.S. 817, 818, 102 S.Ct. 2727 (1982) ("On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred").

In *Reese v. County of Sacramento*, plaintiff filed a § 1983 claim, among other claims, after he was shot in the chest in his residence by a Sacramento County deputy; plaintiff alleged the deputy used excessive force in violation of plaintiff's Fourth Amendment rights. 888 F.3d 1030, 1035, (9th Cir. 2018). The claim moved to a jury trial when the parties disputed which deputy had actually shot Reese and whether Reese had brandished a knife at the deputies (thus posing "an immediate threat of death or serious physical injury"). *Id*. at 1036. The trial judge submitted separate interrogatories to resolve the factual disputes, including whether Plaintiff was subjected to excessive force. Following a seven-day jury trial, the jury found in Plaintiff's favor on the Fourth Amendment claim against one of the two defendant-officers' (Defendant-deputy Rose). *Id*.

After the jury verdict, Defendant Rose moved for judgment as a matter of law, re-asserting his entitlement to qualified immunity. The trial judge determined Rose was entitled to qualified immunity and entered summary judgment *sua sponte* on the Fourth Amendment claim and a separate State law claim. *Id*. Plaintiff appealed the trial court's post-verdict decision, arguing the jury's finding that Defendant Rose used excessive

REPORT AND RECOMMENDATION - 7

force in violation of his Fourth Amendment right was conclusive to determining Defendant was not entitled to qualified immunity. *Id.* at 1037.

The appellate court disagreed with the plaintiff and concluded, "…although the jury's finding that Reese posed no immediate threat of death or serious physical injury to Rose addresses the first prong of the analysis, it does not answer the purely legal question of whether the right was clearly established in this context." *Id*. at 1038. In its review, the appellate court cited *Morales v. Fry*, 873 F.3d 817, 819-820 (9th Cir. 2017), where the court clarified the "clearly established law" prong is a matter of law to be decided solely by the trial judge. *Reese,* 888 F.3d at 1037 (citing *Morales*, 873 F.3d at 824-5). Thus, although the jury found Defendant Rose violated the Plaintiff's Fourth Amendment right, Plaintiff failed to identify an analogous Ninth Circuit precedent, establishing Defendant's conduct violated a "clearly established" right notifying *every* reasonable deputy the Defendant's conduct was unlawful. *Id*. at 1038. In sum, the *Reese* Court held the trial judge properly entered judgment in favor of Defendant despite the jury finding the deputy used excessive force, because the question of whether clearly established law existed at the relevant time for purposes of qualified immunity is ultimately a legal determination reserved for the trial court. *Id*. at 1040.

In this case, Plaintiff Wilson did not meet his burden to show that precedent was clearly established on the allegation that he was removed from the kitchen after the defendant refused to provide a Ramadan meal, as he did not cite to case law that shows a clearly established right on these or similar facts, and the Court is not aware of any such clearly established law. *See Gordon v. County of Orange,* 6 F.4th 961, 969 (9th Cir. 2021) (resolving the "clearly established law" question presents a pure question

REPORT AND RECOMMENDATION - 8

of law and requires the Court to draw on its knowledge of relevant precedent rather than solely relying on cases cited by plaintiff). In this situation, removing plaintiff from the kitchen area was not an adverse action, and could not reasonably have put any official on notice that what they were doing was a retaliatory act under 42 U.S.C. § 1983.

With respect to plaintiff's allegations that defendant threatened violence against plaintiff when plaintiff stated that he intended to file a grievance, there are genuine disputes of material facts that bear on the issue of whether qualified immunity applies. *See Hughes v. Rodriguez,* 31 F.4th 1211, 1223-1224 (9th Cir. 2022) (Even if qualified immunity applied to some of the conduct of the defendant – a law enforcement officer who deployed a police dog while pursuing the plaintiff when plaintiff escaped from prison -- the evidence concerning other conduct – conduct that allegedly happened after the plaintiff was handcuffed – was not appropriate for a summary judgment on qualified immunity.)

Plaintiff alleges that he threatened to file a formal grievance based on defendant's refusal to feed plaintiff. *Id.* After plaintiff made this statement of intent to file a grievance, defendant allegedly "became belligerent and threatened to cause plaintiff [Wilson] physical bodily harm for exercising his rights" and then sent plaintiff back to his living unit. *Id.* The Amended Complaint is sworn under penalty of perjury. Dkt. 37, at 6. Plaintiff asserts the violent threats were unprovoked. Dkt. 37, Amended Complaint, at 2-3. Plaintiff submitted affidavits from corroborating witnesses. Dkt. 37, Amended Complaint, at 10, 13, 14.

The defense submitted documentation about the alleged retaliation, where Defendant Poor contended that he did raise his voice toward plaintiff in order to get the

REPORT AND RECOMMENDATION - 9

attention of correctional officers; that Defendant Poor "might have said hell"; the defendant stated that plaintiff "was raising his voice and escalating, I wanted him removed before it became potential physical incident." Dkt. 43-3, Notification of Employee Conduct/Reprisal Grievance, at 5. In the same document, plaintiff asserted that the conversation with defendant escalated, and plaintiff explained, "When I said you do not know what you are talking about he got pissed highly upset about what I said A/C Poor shouted get the fuck out of my kitchen, he also stated he would beat my ass." *Id.,* at 6.

The Assistant Secretary for the Washington State Department of Corrections, Tomas P. Fithian, after reviewing plaintiff's grievance and the response to the grievance, stated that: "Employees are expected to treat incarcerated individuals with dignity and respect. In this case you should have been provided with an appropriate professional response. This information will be shared with the facility Superintendent for follow up with the employee." Dkt. 43-3, at 16. In addition, in the investigation notes, another DOC employee witness, Keith Crovisier, stated that Defendant Poor "did not curse but did raise his voice". Dkt. 37, Amended Complaint, Exhibit F at 20.

On this record, the plaintiff's allegations of fact with respect to the Defendant Poor's threats of bodily harm are contradicted by the defendants' documentation. Dkt. 43-3; Dkt. 37 at 20. The defendant's evidence shows that Defendant Poor stated he thought plaintiff was escalating his behavior; Poor also stated that, although he raised his voice and may have said "hell", he did not make any threat of physical violence toward plaintiff. *Id.* Another employee, Keith Crovisier, stated that Defendant Poor "did not curse but did raise his voice".

REPORT AND RECOMMENDATION - 10

This is a genuine dispute of material fact that is relevant to qualified immunity. At the time of the events in this case (May of 2019) there was clearly established law that the mere threat of harm can amount to an adverse action for a retaliation claim. *Brodheim v. Cry,* 584 F.3d 1262, 1270-1271 (9th Cir. 2009) (holding that when a correctional officer stated to the plaintiff that "I'd like you to be careful what you write" – referring to the prisoner's continued use of the grievance system, such a warning was sufficient to create a genuine dispute of material fact as to adverse action and chilling effect); *Watison v. Carter,* 668 F.3d 1108, 1114 (9th Cir. 2012) (finding that a prison official threatening to punch an inmate for filing a grievance was an adverse action). The proper inquiry is "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envtl. Ctr. V. Mendocino County,* 192 F.3d 1283, 1300 (1999). Intent to inhibit the filing of a grievance may be demonstrated through either direct, or circumstantial, evidence. *Id.; see, Hines v. Gomez,* 108 F.3d 265, 268 (9th Cir. 1997) (circumstantial evidence of plaintiff's reputation for filing grievances, and plaintiff's statement threatening to file a grievance, was sufficient to support the jury's verdict concerning the element of defendant's motive).

## IN FORMA PAUPERIS STATUS ON APPEAL

In the event the Court declines to adopt this Report and Recommendation and grants defendants' motion for summary judgment, the Court would have to determine whether plaintiff's *in forma pauperis* status should continue on appeal. *See* 28 U.S.C. §1915(a)(3) ("an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith"). The Court must determine whether such an

REPORT AND RECOMMENDATION - 11

appeal is frivolous or malicious, or whether it fails to state a claim on which relief may be granted. *See* 28 U.S.C. §1915(e)(2)(B)(i)&(ii).

There is no evidence that such an appeal would be frivolous or taken in bad faith. Accordingly, the Court recommends that in the event the Court declines to adopt the Report and Recommendation and grants defendants' motion for summary judgment, that plaintiff's *in forma pauperis* status should continue in the event of an appeal.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends defendants' motion for summary judgment, and plaintiff's cross-motion for summary judgment, should be denied. (Dkts 71, 74).

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration October 14, 2022 as noted in the caption. **The parties must file any objections to the Report and Recommendation by October 14, 2022 and no response to the objections will be considered**.

Dated this 29th day of September, 2022.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge