UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARIO WILSON,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>RICHARD POOR,<br><br>　　　　　　　Defendant. | CASE NO. C19-5920 BHS<br><br>ORDER |

THIS MATTER is before the Court on Defendant Richard Poor's third motion for summary judgment, Dkt. 153, and on pro se Plaintiff Mario Wilson's third motion for appointment of counsel, Dkt. 162.

The case's factual and procedural history is thoroughly described in prior orders, including most recently Magistrate Judge Theresa L. Fricke's January 3, 2023 Report and Recommendation (R&R), Dkt. 81, and this Court's Order adopting that R&R, Dkt. 94.

The facts are not complicated, though the procedural history is long. On May 5, 2019, Wilson was a prisoner at Stafford Creek Correctional Center. Wilson's initial complaint alleges he got into a verbal altercation with Poor, a cook in the prison's kitchen, over the start date of Ramadan, and over Wilson's request for a Ramadan meal.

ORDER - 1

According to Wilson, Poor ordered Wilson to leave the kitchen, or Poor would "beat [Wilson's] ass." Dkt. 5 at 3. *See also* Dkt. 94 at 2. Wilson's contemporaneous grievance is attached to his amended complaint:

> I informed A/C Ronald Poor that his statement was incorrect & he didn't know what he was talking about. Upon hearing that, A/C Ronald Poor's whole face turned red as he screamed as loud as he could "GET THE FUCK OUT OF MY KITCHEN!" In Mr. R. Poor's rage, he went even further and boldly stated that he would "BEAT MY ASS" if I didn't leave his (A/C Ronald Poor) kitchen.

Dkt. 37 at 18; *see* also Dkt. 43-3 at 2.

Wilson sued in September 2019, asserting that Poor had violated Wilson's constitutional right to free exercise of religion. Dkt. 5. Wilson's amended complaint asserts that Poor became "enraged" about Wilson's request for a Ramadan meal and "interrupted" Wilson's speech, "subjecting him" to Poor's religious interpretation, and violating Wilson's religious freedom. Dkt. 37 at 3. Wilson alleges that he then "threatened to file a formal paper grievance" and Poor "became belligerent" and threatened to cause Wilson bodily harm for exercising his rights. He asserts that Poor retaliated further by sending Wilson back to his living unit, without a meal. *Id*.

The Court dismissed Wilson's religious freedom claim because he did not exhaust his administrative remedies. *See* Dkts. 66 and 73. Poor previously sought summary judgment on Wilson's retaliation claim, arguing that there was no evidence supporting it, that Poor was entitled to qualified immunity, and that Wilson was not entitled to damages. Dkt. 71.

ORDER - 2

Judge Fricke agreed that Poor was entitled to qualified immunity on Wilson's claim that Poor retaliated against him by ordering him out of the prison kitchen based on his religious meal request, and recommended that the Court grant summary judgment on that claim. Dkt. 81 at 9. But she concluded there were questions of fact about whether Poor threatened Wilson with violence in retaliation for Wilson threatening to file a grievance, and that Poor was not entitled to qualified immunity on that claim. *Id*. Her R&R recommended the Court deny Poor's summary judgment motion on that claim. *Id*. at 11.

Poor objected to the R&R, arguing that Wilson's claim that Poor retaliated against him for threatening to file a grievance was unsupported by any evidence, and was contradicted by his own grievance. Dkt. 83. Poor claimed that the R&R did not address all his arguments, or address his claim that Wilson was not entitled to compensatory damages.

The Court adopted the R&R, concluding that because Poor's arguments about the deficiencies in Wilson's second retaliation theory were raised for the first time in his Objections to the R&R, and Wilson had no opportunity to respond. Dkt. 94 at 6. It denied Poor's summary judgment motion on Wilson's "second" retaliation theory. It granted Poor's motion and dismissed Wilson's claim for compensatory damages but denied Poor's claim seeking dismissal of Wilson's claim for punitive damages. *Id*. at 10.

Wilson's only remaining claim is that Poor threatened Wilson with physical violence because Wilson told Poor that he was going to "grieve" Poor's refusal to serve him a Ramadan meal.

Poor again seeks summary judgment on this claim. Dkt. 153. He asserts there is no evidence supporting Wilson's claim that Poor retaliated against him by threatening him with bodily harm and removing him from the prison kitchen because Wilson threatened to file a grievance over the denial of his Ramadan meal, in violation of his First Amendment rights. Dkt. 153.

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24. There is no requirement that

the moving party negate elements of the non-movant's case. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. at 248.

To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the defendant must be a person acting under color of state law, (2) and his conduct must have deprived the plaintiff of rights, privileges or immunities secured by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286-87 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert. denied*, 449 U.S. 875 (1980). Section 1983 is not merely a "font of tort law." *Parratt*, 451 U.S. at 532, *overruled on other grounds by Daniels*, 474 U.S. 327 (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)). That a plaintiff may have suffered harm, even if due to another's negligent conduct, does not in itself necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344, 347 (1986).

To prevail on his § 1983 retaliation claim, Wilson must provide evidence which, viewed in the light most favorable to him, establishes that (1) he was subjected to an adverse action; (2) the adverse action was imposed because he engaged in legally protected conduct;; (3) the adverse action chilled the prisoner's exercise of his First Amendment rights; and (4) the adverse action did not advance a legitimate penological goal. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). In addition, Wilson must

1   show the retaliation was the substantial or motivating factor behind the conduct of the

2   prison official. *See Mt. Healthy*, 429 U.S. 274; *Brodheim v. Cry*, 584 F.3d 1262, 1271

3   (9th Cir. 2009).

4       Poor argues that because they are so easy to assert, prisoner retaliation claims must

5   be viewed with skepticism to avoid interfering with prison operations. Dkt. 153 at 5

6   (citing *Canell v. Multnomah Cnty*, 141 F. Supp. 2d. 1046, 1059 (D. Or. 2001)). He argues

7   Wilson's current claim—that Poor became enraged and threatened him only after he

8   threatened to grieve the denial of his Ramadan meal—is not supported by Wilson's own

9   grievance. Dkt. 153 at 5 (citing Dkt. 43-3; *see also* Dkt. 37 at 18)). It argues that instead,

10   Wilson consistently attributed Poor's "rage" to Wilson's request for a Ramadan meal,

11   and to the parties' heated disagreement about when Ramadan started. Wilson's

12   contemporaneous grievance does not mention that he threatened to file a formal

13   grievance at all; it instead asserts merely that Poor became red-faced with rage and

14   threatened to "beat his ass" after Wilson told Poor that Poor "did not know what he was

15   talking about." Dkt. 43-3 at 2.

16       Wilson signed a type-written version of his grievance a week later. Dkt. 43-3 at 3.

17   In a follow-up interview a month later, Wilson confirmed that Poor became "pissed

18   highly upset" when Wilson told him he did not know what he was talking about:

> 5. During your conversation with A/C Poor did the conversation escalate? When I said you do not know what you are talking about he got pissed highly upset about what I said A/C Poor shouted get the fuck out of my kitchen, he also stated he would beat my ass.
> 6. Is there anything else you would like to add? nope
>
> I Mario Wilson agree with interview questions
> [signature] 5-5-19

Dkt. 43-3 at 6.

Wilson made no mention of his own threat to file a grievance, at all, much less that it was the motivation for Poor threatening him. Poor also points out that none of the other witnesses testified that the situation escalated when Wilson threatened to file a grievance. Dkt. 153 at 6 (citing Dkt. 43-3 at 5-8). He argues that a retaliation claim is not plausible if there are more likely explanations for the action. *Id*. at 5 (citing *Ashcroft*, 556 U.S. at 681).

Wilson's Response to reiterates that he was engaging in protected religious activities "(i.e. the right to receive Ramadan meal(s), right to pray, etc.)." Dkt. 160 at 2. He asserts that that Poor retaliated against him and threatened to beat his ass if he did not leave the kitchen, again because he threatened to file a formal grievance. He cites only his own amended complaint as support for that conclusion. Dkt. 160 at 2 (citing Dkt. 37 at ¶9).

But Wilson's newly-minted explanation for why Poor threatened him and removed him from the kitchen is flatly inconsistent with Wilson's prior, contemporaneous articulations of the events, and it is not supported by any evidence. Wilson consistently reported and alleged that Poor became enraged after, and because, Wilson told him he did not know what he was talking about, regarding the start of Ramadan and Wilson's resulting right to a Ramadan meal. Dkt. 43-3 at 2, 3, 6. He did not claim at the time that what set Poor off was instead his threat to file a grievance; neither he nor any of the witnesses reported at the time that he even threatened to file a grievance. When he was interviewed a month after the incident, Wilson again did not mention that he threatened

to file a grievance, or his threat was what motivated Poor to have him removed from the kitchen. When asked if there was anything else he wanted to add, he said "nope." Dkt. 43-3 at 6.

Wilson did not allege or suggest that Poor had some other motive for his rage or his actions until Wilson filed his amended complaint—more than two years after the incident. *See* Dkt. 37. Wilson sought and obtained leave to file an amended complaint after Judge Fricke recommended that this Court dismiss his initial complaint, for failure to state a plausible claim. Dkt. 20. Her R&R explained:

> [T]he Ninth Circuit has held that the use of vulgar words, verbal harassment and verbal abuse by prison administrators are insufficient, without further conduct, to a state a constitutional deprivation under Section 1983. *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996). Accordingly, plaintiff's allegations of vulgar language and verbal harassment are insufficient without further factual development to state a cause of action under Section 1983.

Dkt. 20 at 4.

The Court agrees with Poor that there is no evidence supporting Wilson's second retaliation claim. Wilson changed his story, and he has yet to explain why. The Court also notes that there is a "more likely explanation" for the event, the one that Wilson himself recognized in his initial grievance: Poor was angered because a prisoner demanded a religious meal before the Ramadan start date formally recognized by the prison, and Wilson continued to argue about it, telling the cook that he did not know what he was talking about. *See* Dkt. 43-3 at 2, 3, 6. A retaliation claim is not plausible when there are "more likely" explanations for the conduct at issue. *Ashcroft*, 556 U.S. at

ORDER - 8

681.Wilson's initial version of the events is consistent with Poor's explanation (at the time and since) that he asked an officer to remove Wilson from his kitchen to preclude escalation of the verbal dispute.

The Court also notes that, though Poor's current motion does not specifically address the issue, it remains Wilson's burden in the face of a summary judgment motion to affirmatively demonstrate that his removal from the kitchen had no valid penological purpose. He has not done so, as a matter of law.

Finally, to comply with the Prison Reformed Litigation Act's exhaustion requirement, a plaintiff must administratively exhaust each of the claims raised in the complaint. *Jones v. Bock*, 549 U.S. 199, 219 (2007); *Cleveland v. Anderson*, 223 Fed. Appx. 652, 652 (9th Cir. 2007). The Court also points out that, as was the case with his religious freedom claim, Wilson has not exhausted his administrative remedies on this revised version of his retaliation claim, as a matter of law. He did not ever "grieve" this issue; he raised it first in his amended complaint.

For these reasons, Poor's summary judgment motion on Wilson's remaining, second retaliation claim is **GRANTED**, and that claim is **DISMISSED** with prejudice. Wilson's third motion for appointment of pro bono counsel is **DENIED** as moot. Wilson's *in forma pauper*is status **SHALL CONTINUE** in the event of an appeal, for the reasons articulated in Judge Fricke's R&Rs, Dkts. 66 and 81.

The clerk shall enter a **JUDGMENT** and close the case.

**IT IS SO ORDERED**.

//

Dated this 13th day of November, 2023.

BENJAMIN H. SETTLE
United States District Judge